IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROPERTY ACCEPTANCE CORP.,     :
        Plaintiff,     :     CIVIL ACTION
                :
        v.     :
                :
MERTON H. ZITIN, et al.,     :
        Defendants     :     NO. 04-3920

MEMORANDUM AND ORDER

McLaughlin, J.                                    September 26, 2005

      This dispute stems from a 1984 loan agreement (the "Note") between the Sandy Mac Food Company and the Corporation for Business Assistance in New Jersey ("CBANJ") that was guaranteed by Merton H. Zitin, Robert M. Zitin and Michael Zitin (the "Zitins"). The Note called for Sandy Mac to make monthly installment payments to CBANJ for a period of twenty-five years. Property Acceptance Corporation, a successor in interest to CBANJ, seeks to recover the remaining balance of the Note plus interest from the Zitins.

      Both parties filed motions for summary judgment. The Court will deny both motions.

I.   The Summary Judgment Record

        Many of the background facts of this case are not in
dispute.[1]  During the 1980s, the Zitins were in business together
as principals in the Sandy Mac Food Company, which operated a
meat processing plant in Pennsauken, New Jersey.  On October 4,
1984, Merton Zitin, on behalf of Sandy Mac, executed the Note in
the amount of $194,000 payable to CBANJ.  Each of the Zitins
separately signed a guaranty agreement (the "Guaranty") under
which they guaranteed the obligations of Sandy Mac.

        Under the Note, Sandy Mac was obligated to pay monthly
installments of interest and principal of $2,106.12 from December
1, 1984 through November 1, 2009.  Failure to pay any installment
was an event of default upon which CBANJ had the option to
accelerate all unpaid principal and interest.  Under the
Guaranty, if Sandy Mac failed to pay any obligation when due,
whether by acceleration or otherwise, each of the defendants

        [1] A motion for summary judgment shall be granted where all
of the evidence demonstrates "that there is no genuine issue as
to any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving
party has the initial burden of demonstrating that no genuine
issue of material fact exists.  Once the moving party has
satisfied this requirement, the non-moving party must present
evidence that there is a genuine issue of material fact.  The
non-moving party may not simply rest on the pleadings, but must
go beyond the pleadings in presenting evidence of a dispute of
fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In
deciding a motion for summary judgment, the Court must view the
facts and all reasonable inferences derived therefrom in the
light most favorable to the non-moving party.  Josey v. John R.
Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

agreed to pay CBANJ, upon written demand, the amount due and unpaid.

From December 1, 1984 until August of 1989, Sandy Mac made monthly payments under the Note.  In 1989, the assets of Sandy Mac were sold to S-M Acquisition, Inc.  S-M Acquisition continued to make monthly payments under the Note until the latter part of 1993.[2]  No payments have been made under the Note since September 2, 1993, by S-M Acquisition, the defendants or anyone else.

The Note was transferred to the United States Small Business Association (the "SBA") in 1994.[3]  From 1994 to August 31, 2000, no payments were recorded on the Note and the SBA never made a demand for payment from Sandy Mac, S-M Acquisition, the defendants or anyone else.  On August 31, 2000, the plaintiff, then known as Loan Participant Partners, Ltd., purchased the Note from the SBA.

On October 6, 2000, Beal Bank, acting as servicing agent for the plaintiff, notified Sandy Mac of the sale of the

_____

[2] S-M Acquisition made every payment until August of 1993. Following a missed payment in August, S-M made its September 1993 payment, but has not made a payment since.

[3] The exact date of the transfer to the SBA is not clear from the current record.  The defendants provide documentation showing that this transfer happened in February of 1994.  The plaintiff does not take a position on precisely when the transfer happened, but provided an exhibit implying that the transfer took place in June of 1994.  (Defs.' Mot. Summ. J. Ex. C; Pl.'s Mot. Summ. J. Ex. N).

Note from the SBA to the plaintiff.  On August 18, 2003, Beal Bank sent a letter to the Zitins and Sandy Mac demanding payment of the amount due under the Note.  On September 23, 2003, Beal Bank sent a second letter to the Zitins, as well as to Sandy Mac, notifying them that the Note had been accelerated and requesting $536,893.31 as the total amount due.

On August 18, 2004, the plaintiff filed this lawsuit alleging a single count of breach of the Guaranty and seeking the unpaid principal and accrued interest as well as attorney's fees and costs.

II.  The Defendants' Motion for Summary Judgment

The Court must determine whether the plaintiff's demand for back payments on August 18, 2003, and its demand for the entire balance of the Note on September 23, 2003, are enforceable.  The defendants' argue that these demands are not enforceable because they were made an unreasonably long time after the initial default in late 1993.  The Court concludes that the plaintiff was under an obligation to make a demand for payment from the defendants within a reasonable time following each default.  However, the plaintiff was not under an additional obligation to demand payment of the entire balance of the Note following the initial default in late 1993.

4

Under the Guaranty, two separate events must take place before the plaintiff has an enforceable right against the defendants.  First, there must have been a failure to pay an obligation under the Note by S-M Acquisition.  Second, the plaintiff had to demand payment, in writing, from the defendants. (Pl.'s Mot. Summ. J. Ex. H; Defs.' Mot. Summ. J. Ex. E).

Accordingly, the Court will analyze the defendants' summary judgment motion in two steps.  First, should the missed payments by S-M Acquisition be viewed as a single default that started in 1993 and continues to this day or, alternatively, should each missed payment be treated as a separate and independent default?  Second, was the plaintiff under an obligation to demand payment from the defendants within a reasonable time following each default by S-M Acquisition?

Before beginning this analysis, there is an initial matter of whether state or federal law should apply.  Both parties have agreed that federal law should govern because the plaintiff is an assignee of the SBA.  (Summ. J. Hr'g Tr. 4-5, July 22, 2005).  Due to that agreement, the Court will apply federal law.

A.   Timing of Default Under the Note

As an initial step, it is necessary to characterize the missed payments under the Note.  The defendants view the missed

payments as a single default that started in late 1993.  The defendants argue that the plaintiff was under an obligation to demand the entire amount due under the Note following the initial missed payment in 1993.  The plaintiff argues that each missed payment should be treated as a separate default until the plaintiff exercises its option to accelerate the debt.  The Court concludes that Board of Trustees of District No. 15 Machinists' Pension Fund v. Kahle Engineering Corp., 43 F.3d 852 (3d Cir. 1994) [hereinafter Kahle] answers this question in favor of the plaintiff.

Kahle involved a dispute over missed payments by an employer under a payment plan pursuant to the Multiemployer Pension Plan Amendment Act ("MPPAA").  The employer, Kahle Engineering Corp., was assessed withdrawal liability by the pension fund it contributed to in 1984.  The pension fund determined that Kahle would need to make quarterly payments over a period of about ten years to satisfy its liability.

Kahle did not make any payments after December of 1984. Almost four years elapsed before the pension fund demanded past due payments in August of 1988.  It was not until September of 1993 that the pension fund filed suit in federal court.  Despite this delay, the United States Court of Appeals for the Third Circuit held that the pension fund could recover payments due

within the six year period prior to the filing of the lawsuit.[4]
<u>Kahle</u>, 43 F.3d at 857.

      In reaching this conclusion, the court in <u>Kahle</u> held
that "[i]n an installment contract, a new cause of action arises
from the date each payment is missed." <u>Id.</u> (citing 4 A. Corbin,
<u>Corbin on Contracts</u> § 951 (1951)).  The <u>Kahle</u> Court went on to
reason:

> Consider, for example, a mortgage with a twenty-
> year payout in a jurisdiction with a six-year
> statute of limitations.  If, for some reason, the
> mortgage company fails to sue the mortgagor for
> more than six years after the mortgagor fails to
> pay the first and succeeding payments, would it be
> seriously argued that the mortgage company is
> precluded thereafter from suing for those payments
> due within the six years preceding the lawsuit or
> from exercising the acceleration clause as to the
> remaining fourteen years?

<u>Id.</u> at 858.  The broad language used by the court in <u>Kahle</u>
supports the plaintiff's argument that each missed payment under
the Note should be considered a separate and independent default.

      The United States Supreme Court, also in the context of
the MPPAA, has adopted the reasoning in <u>Kahle</u>.  <u>Bay Area Laundry
& Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.</u>,
522 U.S. 192, 208 (1997) [hereinafter <u>Bay Area Laundry</u>].  In
adopting the rule that each missed installment payment is a
separate cause of action, the Supreme Court noted that "[t]hat is

---

[4] The court in <u>Kahle</u> applied a six-year statute of
limitations running from the time of each missed installment
payment.  <u>Kahle</u>, 43 F.3d at 857.

the standard rule for installment obligations." <u>Bay Area</u>
<u>Laundry</u>, 522 U.S. at 208.

The defendants attempt to distinguish <u>Kahle</u> on the
grounds that it did not involve a guaranty arrangement and that
it did not deal with an SBA loan.  Although <u>Kahle</u> did not involve
a dispute identical to the one in this case, it did lay out broad
principles of contract law that are applicable here.

First, although there are differences between a payment
plan under the MPPAA and a loan agreement involving the SBA, that
distinction is not relevant here.  The <u>Kahle</u> Court itself did not
limit its discussion to the specifics of the MPPAA but, instead,
laid out broader principles applicable to any contract involving
installment payments.  Furthermore, in support of the proposition
that, absent acceleration, each missed installment payment is a
separate default, the <u>Kahle</u> Court cited with approval <u>United</u>
<u>States v. LaFrance</u>, 728 F. Supp. 1116 (D. Del. 1990), a case
which dealt with missed installment payments under an SBA loan.
<u>Kahle</u>, 43 F.3d at 857.

Second, it is true that <u>Kahle</u>, and for that matter <u>Bay</u>
<u>Area Laundry</u>, involved only a debtor-creditor relationship, and
did not deal specifically with a guaranty agreement.  However, at
this stage in the analysis, the Court is simply considering the
issue of how to characterize the defaults by the debtor, S-M
Acquisition, under the Note.  <u>Kahle</u> speaks directly to this

initial issue of whether the missed installment payments by S-M Acquisition under the Note should be treated as a single default, or separate and independent defaults.

Furthermore, it would be inconsistent with the general structure of a guaranty to hold that a creditor, although not under an obligation to demand the entire amount due under a note following an initial default, is under an obligation to make such a demand under the guaranty. Such a rule could potentially have the effect of voiding a guaranty while at least part of the obligation under the note was still enforceable.

The defendants do point to one case, <u>Curry v. United States</u>, 679 F. Supp. 966 (N.D. Cal. 1987), for the proposition that a creditor is under an obligation to accelerate a note and demand the entire amount due following an initial default. <u>Curry</u>, 679 F. Supp. at 970. However, <u>Curry</u> is inconsistent with <u>Kahle</u>. The <u>Kahle</u> Court stated that in the context of a note with installment payments due over time, a creditor should not lose its right to collect payments due within the limitations period simply because the creditor failed to demand payments due outside of the limitations period. <u>Kahle</u>, 43 F.3d at 858. The <u>Curry</u> Court held almost the opposite. It stated that a creditor forfeits all ability to enforce a note by failing to demand the entire amount due in a reasonable time. <u>Curry</u>, 679 F. Supp. at 970.

The Court concludes that each missed payment under the
Note, from late 1993 until September 23, 2003 (when Beal Bank
sent a letter on behalf of the plaintiff accelerating the Note)
should be treated as a separate default.  Thus, under the
Guaranty, each missed installment payment triggered a separate
right to demand payment from the defendants.  The next question
to be determined is whether the plaintiff was under an obligation
to make a demand within a reasonable time following the numerous,
separate events of default under the Note beginning in 1993.

### B.  The Plaintiff's Demand

The next issue is whether the plaintiff was under an
obligation to make a demand under the Guaranty within a
reasonable time of each default under the Note.[5]  The defendants

---

[5] The issue of the reasonableness of the plaintiff's demand
is a separate issue from the statute of limitations.  Under
federal law, the applicable statute of limitations is six years.
28 U.S.C. § 2415(a).  Both parties agree that the statute of
limitations did not begin to run with respect to any claim under
the Guaranty until a written demand was made.  (Summ. J. Hr'g Tr.
5, July 22, 2005).

The defendants did cite FDIC v. Hinkston, 848 F.2d 432 (3d
Cir. 1988) in support of their argument that the plaintiff's
cause of action accrued when the SBA acquired the Note.
Hinkston held that where a federal agency acquires a note in
default, the six-year federal statute of limitations begins to
run on the date the note was acquired, as opposed to the date of
default.  Hinkston, 848 F.2d at 435.  In other words, under
Hinkston, when a federal agency acquires a note on which the
statute of limitations has already started to run, but has not
yet expired, the limitations period is restarted on the date of
acquisition and the federal agency has six years to bring suit.

rely on <u>United States v. Gordon</u>, 78 F.3d 781 (2d Cir. 1996) to argue that such an obligation exists.  The Court finds the reasoning in <u>Gordon</u> persuasive and concludes that the plaintiff was under an obligation to make a demand under the Guaranty within a reasonable time following each separate default under the Note.

  <u>Gordon</u> involved a loan from the Economic Development Administration of the United States Department of Commerce (the "EDA") to Tableau Company, Inc.  That loan was guaranteed by Tableau's president, Carl Gordon and his wife.  The loan called for monthly installment payments to be made by Tableau from March of 1980 through January of 1990.

  Tableau never made an installment payment on the loan. It was not until June of 1984 that the EDA demanded payment from the Gordons and accelerated the note.  The Gordons never responded and in October of 1986, the EDA made another demand, which the Gordons also ignored.  Finally, in June of 1990, almost six years after the initial demand, the government sued the Gordons on the guaranty.

---

  The analysis in <u>Hinkston</u> is not relevant to this case though.  Here, no demand was ever made on the defendants by CBANJ.  Thus, when the SBA acquired the Guaranty in 1994, the statute of limitations had not started to run.  The first demand made on the defendants was on August 18, 2003 by the plaintiff. The plaintiff brought a timely suit one year later.

The court in <u>Gordon</u> held that following a default by a debtor, a creditor cannot unreasonably delay making a demand on a guarantor.  <u>Gordon</u>, 78 F.3d at 785.  Although <u>Gordon</u> did not explicitly define how long a reasonable time was, it did conclude that "a delay between default and demand that does not exceed the applicable limitations period is ordinarily regarded as reasonable."  <u>Id.</u> at 786.  Because the EDA's 1984 demand was within six years of the initial default in 1980 the court held that the EDA's demand was presumptively reasonable as to all payments due under the note.[6]  The <u>Gordon</u> Court then considered whether any special circumstances might apply that would make the demand unreasonable and found none.

The Court finds <u>Gordon</u>'s reasoning persuasive.  The parties agree that making a demand is a condition precedent to the running of the statute of limitations.  (Summ. J. Hr'g Tr. 5, July 22, 2005).  Without a requirement that such a demand be made in a reasonable time following a default, the plaintiff could postpone the running of the limitations period indefinitely.  <u>See Gordon</u>, 78 F.3d at 785.  Recognizing this potential problem, courts in at least the Eighth, Ninth and D.C. Circuits have adopted similar rules requiring a demand to be made in a

---

[6] As in this case, the applicable statute of limitations in <u>Gordon</u> was six years.  <u>Gordon</u>, 78 F.3d at 783.  <u>Gordon</u> stated that the cause of action accrued in June of 1984 when the first demand was made.  Because the case was brought within six years of the accrual date it was held to be timely.

12

reasonable time.  See, e.g., United States v. Garan, 12 F.3d 858, 860 (9th Cir. 1993); United States v. Vanornum, 912 F.2d 1023, 1027 n.5 (8th Cir. 1990); Nyhus v. Travel Mgmt. Corp., 466 F.2d 440, 452-53 (D.C. Cir. 1972).

The Court holds that with respect to each separate default under the Note, the plaintiff was under an obligation to make a demand under the Guaranty within a reasonable amount of time.  The plaintiff made a demand for back payments on August 18, 2003.  About a month later, the plaintiff accelerated the Note and made a demand for the entire balance on September 23, 2003.

The next issue to be considered is the reasonableness of the plaintiff's demand with respect to each missed installment payment.  The Court does not have a complete enough record on which to decide this issue.  The parties did not discuss at any length the test the Court should use to determine reasonableness.  Nor did the parties set forth the undisputed facts that are relevant to a test of reasonableness.  The Court will conduct a conference with counsel to determine how the parties would like to proceed in light of the Court's decision.


III.  The Plaintiff's Motion for Summary Judgment

The plaintiff has also moved for summary judgment.  The Court will deny the plaintiff's motion for two independent

reasons.  First, there is uncertainty regarding the reasonableness of the plaintiff's demand.  Second, there is a factual dispute concerning the defendants' obligation under the Note.

The plaintiff alleges that at the time the complaint was filed, there was an unpaid principal balance of $249,470.92 and accrued interest of $313,773.80.  The defendants dispute this figure, noting that the face amount of the Note was only $194,000 and that the Transcript of Account and Payment History shows the unpaid principal balance to be only $174,608.90.  (Pl.'s Mot. Summ. J. 6; Defs.' Opp'n Br. 2-3).

The dispute over the amount due on the Note, combined with the uncertainty as to the reasonableness of the plaintiff's demand, leads the Court to deny the plaintiff's motion for summary judgment.

An appropriate Order follows.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PROPERTY ACCEPTANCE CORP.,       :       CIVIL ACTION
                 Plaintiff,      :
                                 :
                 v.              :
                                 :
MERTON H. ZITIN, et al.,         :
                 Defendants      :       NO. 04-3920


ORDER


        AND NOW, this 26th day of September, 2005, upon
consideration of the plaintiff's Motion for Summary Judgment
(Docket No. 17), the defendants' Opposition and the plaintiff's
Reply as well as the defendants' Motion for Summary Judgment
(Docket No. 16), the plaintiff's Opposition and the defendants'
Reply, and arguments presented at a hearing held on July 22,
2005, IT IS HEREBY ORDERED that for the reasons set out in a
memorandum of this date, the plaintiff's Motion for Summary
Judgment is DENIED and the defendants' Motion for Summary
Judgment is DENIED.


                              BY THE COURT:



                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.