IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROPERTY ACCEPTANCE CORP.,         :
        Plaintiff,         :    CIVIL ACTION
                               :
        v.                 :
                               :
MERTON H. ZITIN, et al.,           :
        Defendants         :    NO. 04-3920

MEMORANDUM AND ORDER

McLaughlin, J.                                          March 20, 2007

        This is the Court's second Memorandum and Order in this case, which involves an attempt by the plaintiff to collect on a note guaranteed by the defendants.  The Court incorporates the factual discussion from its prior opinion, which denied both parties' motions for summary judgment. (Mem. Op. of Sept. 26, 2005.)  The parties have now filed renewed motions for summary judgment, which the Court will deny because of the existence of disputes of material fact.

I.  Background

        In its prior Memorandum, the Court held that each missed payment under the note until its acceleration should be treated as a separate default, triggering a separate right to demand payment under the guaranty.  (Id. a 10.)  The Court further held that (1) the statute of limitations on the plaintiff's claim did not begin to run until a demand for payment

was put to the defendants and (2) the plaintiff was under an obligation to make such a demand within a reasonable time after each missed payment. (Id. at 10, 13.)

The Court denied both motions for summary judgment because neither party had briefed the issue of the reasonableness of the plaintiff's demand with respect to each missed payment. Further, the Court observed a dispute about the amount due under the note. The plaintiff alleged that the note had a principal balance of $249,470.92 when the complaint was filed, but the defendants pointed to the note's face-value, $194,000, and the outstanding principal as listed in its payment history, $174,608.90.

The plaintiff has submitted a brief which asserts that under the Court's opinion, it is entitled to $149,936.92 in principal and $134,133.73 in interest, plus $48.20 in interest for each day beyond April 1, 2006. The sum assumes that all payments were made through September 1, 1998 and none thereafter, with interest compounded at the note's 11.733 percent interest rate. The defendants sent the plaintiff and the Court a letter agreeing with this calculation. (Pl.'s Mem. of Law Regarding Defs.' Liability Ex. Q.)

The defendants, meanwhile, have filed a renewed motion for summary judgment, which argues that recently-produced documents from the Small Business Administration ("SBA") show

that the note was accelerated in 1994.  They argue that consequently, the only issue for the Court is the reasonableness of the delay between the acceleration in 1994 and the demand under the guaranty in 2003.  The plaintiff does not argue that a nine-year lapse would be reasonable, but instead denies that the evidence suggests that the note was accelerated.

## II.  The Evidence of Acceleration

In the first round of summary judgment motions, the parties agreed that the note was transferred to the SBA in 1994, but neither side explained the mechanics of the transaction.  The defendants maintain that SBA's documents reveal that the transferral was accomplished when the SBA was called upon to honor its guarantee of a debenture issued by the Corporation for Business Assistance in New Jersey ("CBANJ") which financed the Sandy Mac loan.

According to the defendants, the SBA received the note in consideration of $249,470.92 it paid to honor its guaranty of the debenture.  They assert that this figure represents the sum of the accelerated principal and interest then due on the loan, augmented by a prepayment fee.[1]  These conclusions are repeated

---

[1] The debenture guarantees its holder a certain rate of return.  In order to fulfil its guaranty, the SBA would have to pay not only the principal and interest due as of the date of its payment but an additional fee to ensure that the holder received the guaranteed return.  See Pl.'s Mem. Of Law Regarding Defs.'

by John Villios, district counsel for the SBA, in his declaration filed by the defendants. (Defs.' Supplemental Br. in Supp. Ex. B.)

Mr. Villios's assertion that the $249,470.92 figure represents an acceleration is not based on any firsthand knowledge of the Sandy Mac loan, but a review of the computer printouts that were produced in response to the defendants' request for documents.  (Villios Dep. at 40-41, 48.[2])  He testified that (1) the SBA's records show that shortly after it acquired the note, it opened a new loan account with a balance of $249,470.92 with Sandy Mac listed as the debtor; (2) the note had a loan number of 173-644-3010, while the account number on the newly-opened loan was 173-633-3500; (3) the substitution of "35" in a loan number occurs when a loan enters default; and (4) generally, when a loan defaults, the entirety becomes due and payable.  (Id. at 38, 44, 56.)

Several documents support the contention that following the SBA's acquisition of the note, it believed that it was owed $249,470.92 in principal from Sandy Mac.  A July 7, 2000 document prepared by the SBA in anticipation of the sale of the loan calculates interest based on this figure.  The principal of the

---

Liability Ex. B;  Villios Dep. at 66.

[2]     A copy of Mr. Villios's deposition is attached to the Defendants' Supplemental Brief in Support as Exhibit A and cited herein as "Villios Dep. at __."

loan sold to the plaintiff was similarly listed as $249,470.92. (Defs.' Br. in Supp. Exs. A-F.)

III. Analysis

The plaintiff does not dispute that its demand for payment in 2003 would be unreasonable if the note were accelerated in 1994. Conversely, if the note was not accelerated in 1994, the parties agree on the amount owed by the defendants under the Court's prior Memorandum. The sole question, therefore, is whether there is a dispute of material fact about whether the note was accelerated. The Court concludes that a dispute of material fact exists.

The loan agreement provides that the entire unpaid principal and interest on the note shall become immediately due and payable upon the written demand of the lender if the borrower fails to cure a default within 15 days. (Pl.'s Mem. of Law Regarding Defs.' Liability Ex. A.) Supporting the defendants' contention that a demand for immediate payment was sent is the fact that acceleration would explain the increase in principal due under the note from the time it was transferred to the SBA to the time it was sold to the plaintiff. The SBA's records suggest that it believed that Sandy Mac owed principal of $249,470.92, and the plaintiff has not provided an alternate explanation for how the outstanding principal could be greater than the face

5

value of the note unless the loan was accelerated.

Further, Mr. Villios testified that he believed that the $249,470.92 figure represented accelerated principal, interest, and fees, and that the new loan account originated by the SBA suggested that there was an acceleration. Although Mr. Villios did not have personal involvement with the Sandy Mac loan, his testimony may be an appropriate illumination of the SBA's ordinary business practices.

The case for acceleration might also be supported by the note's prepayment provision, which states that if a debtor pays the balance of the loan in advance of the 25-year payment schedule, it must pay an additional fee to ensure that the debenture holder receives its guaranteed return.[3] (Pl.'s Mem. of Law Regarding Defs.' Liability Ex. B.) If the prepayment provision applies when the note is accelerated, then upon acceleration, the SBA would be entitled to recoup from Sandy Mac what it had paid to honor its guaranty of the debenture -- principal, interest, and prepayment fees. The fact that the SBA's records indicate that it had a loan of this sum outstanding would be circumstantial evidence that it had, in fact,

---

[3] The Transcript of Account and Payment History reveals that as of February 1994, when the loan was allegedly accelerated, it had an outstanding balance of $184,626.42 ($174,608.90 in principal and $10,017.52 in interest). (Pl.'s Mem. of Law Regarding Defs.' Liability Ex. F.) The amount paid by the SBA in excess of this amount presumably represents prepayment fees.

accelerated the note.

Nonetheless, there are several weaknesses in the defendants' argument that there was an acceleration that prevent a resolution of the issue.  The defendants' contention that the note was accelerated is based on the supposition that if the debenture was accelerated, the note would have been accelerated, and there are problems with this inferential chain.

First, it is unclear whether the debenture was, in fact, accelerated.  The text of the statute under which the note and debenture were issued states that the SBA shall take all necessary steps to purchase or accelerate the debenture not later than the 65th day after a payment is missed on the loan.  15 U.S.C. 697(h)(2) (2006).  The statute thus implies that acceleration and purchase of the debenture are two separate processes.  When a party defaults on the note, the SBA can pay off the debenture ("purchase") or it can demand that the debenture issuer (here CBANJ) pay its obligation in full immediately ("accelerate").  In this case, the SBA appears to have chosen the former.

Second, even if there was an acceleration of the debenture, the defendants have not shown that any action with respect to the debenture would affect the underlying note.  The debenture and the note are related instruments in that the funds raised by the issuing of the debenture were used to fund the loan

made under the note. (Their relatedness is also illustrated by the fact that the statute requires the SBA to take action on the debenture when a party defaults on the note.)

But the two instruments are governed by separate agreements, with separate payment schedules, guaranteed by separate parties. The defendants have not explained how any action that the SBA took regarding its debenture guaranty would necessarily affect its actions as the holder of the note.

The plaintiff, for its part, argues that there could not have been an acceleration, regardless of what is suggested by the SBA's records, because no notice of the acceleration was sent to the defendants or Sandy Mac. The plaintiff is correct that the critical question in determining if the note was accelerated is whether the SBA sent a letter to the debtor demanding immediate payment of the principal and interest due under the note. The treatment of the loan in the SBA's records is an indirect way of addressing this question.

But the plaintiff has not explained, given the absence of any provision in the note or the loan agreement requiring that guarantors be notified of acceleration, why lack of notice to the defendants is relevant. Further, the significance of the plaintiff's assertion that Sandy Mac did not receive notice is not clear for several reasons.

First, payments under the note from 1989 until 1993

were made by S-M Acquisition, which purchased Sandy Mac's assets in 1989. Neither party has shed light on whether notice of acceleration was sent to S-M Acquisition, despite the fact that notice of the acceleration of the loan would seem most naturally sent to the party which had been regularly making payments.

Second, according to Merton Zitin, Sandy Mac was not in business in 1993 when the note was allegedly accelerated. He further testified that Sandy Mac could not be contacted at its address after its assets were sold. (Pl.'s Mem. of Law Regarding Defs.' Liability Ex. D at 41-43, 88-89.) The weight to be accorded to the fact that no notice was received by a party that could not be contacted and did not exist at the time of the alleged acceleration is far from certain.

This uncertainty is reinforced by the lack of context surrounding the absence of any records of acceleration. For instance, do the parties have records of loan notices sent to Sandy Mac after its assets were sold in 1989 or after 1994 when the note was allegedly accelerated? The significance of the defendants' failure to produce a notice of acceleration would be clearer depending on the answer to this question.

Because these issues -- why the SBA listed the principal owed by Sandy Mac as $249.470.92, whether the SBA would have been entitled to demand $249,470.92 from Sandy Mac under the prepayment clause, and where notice of acceleration would have

been sent and whether and by whom it would have been received --are unresolved, summary judgment for either party is not appropriate.  Because neither party has requested a jury trial, the parties shall prepare for a bench trial on the disputed issues outlined above.

       An appropriate order follows.

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROPERTY ACCEPTANCE CORP.,    :
            Plaintiff,        :     CIVIL ACTION
                              :
            v.                :
                              :
MERTON H. ZITIN, et al.,      :
            Defendants        :     NO. 04-3920
```

ORDER

AND NOW, this 20th day of March, 2007, upon consideration of the parties' motions for summary judgment (Docket Nos. 38, 39, and 51), and all opposition and reply briefs, IT IS HEREBY ORDERED that the motions are DENIED for the reasons stated in the accompanying memorandum.

IT IS FURTHER ORDERED that the parties shall confer and report to the Court by March 30, 2007 a time by which they will be prepared for a bench trial.

BY THE COURT:


/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.